UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **EMMALEE YOUNG,** | **CIVIL ACTION NO. 5:20-472-KKC** |
| **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **CITY OF PARIS,** **WILLIAM MICHAEL FIELDS, JR.**, *Individually and in his official capacity as employee for the City of Paris*, **CHIEF MICHAEL DUFFY**, *Individually and in his official capacity as employee for the City of Paris,* **CODY HENSLEY**, *Individually and in his official capacity as employee for the City of Paris,* **OFFICER LEWIS BOYER**, *Individually and in his official capacity as employee for the City of Paris*, and **OFFICER MATT ROYSE,** *Individually and in his official capacity as employee for the City of Paris*, | |
| **Defendants.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion for summary judgment (DE 23) filed by certain of the defendants. For the following reasons, the Court will grant the motion.

## I.    Undisputed Facts and Plaintiff's Version of Disputed Facts

Defendants are entitled to summary judgment if, under the undisputed facts and the plaintiff's version of any material disputed facts, defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Davenport v. Causey*, 521 F.3d 544, 546 (6th Cir. 2008); *Rimco, Inc. v. Dual-Tech, Inc.*, No. 3:21-CV-313, 2022 WL 4545608, at *1, n.1 (E.D. Tenn.

1

Sept. 28, 2022) ("As required, this Court accepts undisputed facts as true. In deciding a motion for summary judgment as to which the parties dispute any material facts, the Court must view the disputed evidence in the light most favorable to the party responding to the motion—here, Plaintiff—and draw all reasonable inferences in that party's favor.")

Accordingly, for purposes of this motion, the Court has considered the material facts that the parties agree to and has considered the plaintiff's version of any material facts that the parties dispute.

In early 2019, Plaintiff Emmalee Young was 17 years old and living in Cynthiana in Harrison County, Kentucky. (DE 23, Mem. at 1-2; DE 28, Response at 1.) At that time, she was interested in in career in law enforcement or emergency medical services. Thus, she participated in the Cynthiana Police Explorers, a program run for young people interested in law enforcement and emergency service careers.  (DE 23, Mem. at 1-2; DE 28, Response at 1.)

At the time, defendant William Michael Fields, Jr. was a Harrison County Volunteer Fire Fighter and the Harrison County Constable. He was also employed as a fire fighter for the city of Paris, Kentucky, which is just about a 20-minute drive from Cynthiana. (DE 28, Mem. at 2.) He was 36 years old. (DE 1, Complaint at ¶ 12; DE 28, Response at 2.) Fields and Young met at the Harrison County Volunteer Fire Department Oddville Station. (DE 1, Complaint ¶ 12.) Fields began contacting Young through text messages and Snapchat and going to the McDonalds where Young worked. At some point, he sent her a photograph of his penis via Snapchat. (DE 28, Mem. at 2.)

Fields later had sexual intercourse with Young on two occasions.

The first time was on March 17, 2019. That evening, Fields went to the Walmart parking lot in Cynthiana where Young was hanging out with friends. (DE 28, Mem. at 2.) Fields was driving his Harrison County Constable car. (DE 23, Mem. at 3-4; DE 25, Young

Dep. at 83.) Fields invited Young to go with him to look at emergency vehicles stored at the Paris "Safety City." (DE 28, Mem. at 2.) Safety city is a public education building and a storage facility. (DE 24, Hensley Dep. at 34.) Young had been drinking alcohol and was a "little buzzed." (DE 25, Young Dep. at 84.) Young agreed to go, and Fields drove Young to Paris in his constable car. (DE 25, Young Dep. at 84-85.)

While driving Young to Paris, Fields called defendant Matt Royse, who was a law enforcement officer with the Paris Police Department. (DE 28, Mem. at 2; DE 25, Young Dep. at 86.) Fields told Royse "not to come up to the building because he had – he was having a girl up there and he didn't want to be bothered." (DE 25, Young Dep. at 87.)

On the way to Paris, Fields also called another Paris law enforcement officer, defendant Lewis Boyer. (DE 28, Mem. at 2; DE 25, Young at 92.) Fields gave Boyer much the same instructions that he gave to Royse. (DE 25, Young at 93.) When Young heard Boyer's name, she looked him up on Facebook and tried to send him a friend request. She testified that she did this so that Boyer would know her age, which was visible on her Facebook profile. (DE 25, Young Dep. at 60, 62-63, 93.) Boyer never responded to the friend request. (DE 25, Young Dep. at 62, 94.) Boyer testified that he did not look at Young's Facebook profile at the time. (DE 26, Boyer Dep. at 31.) He did, however, look at Young's profile picture, and he told Fields via either a Snapchat message or the phone that Young looked young. (DE 26, Boyer Dep. at 31.) Fields told Boyer that Young was over 18. (DE 25, Young Dep. at 63, 97-98; DE 26, Boyer Dep. at 32.)

The facility where the emergency vehicles were stored was locked when Fields and Young arrived, but, because Fields was an instructor at the facility, he had a key. (DE 25, Young Dep. at 92; DE 24, Hensley Dep. at 59-60.) After entering the facility, Fields took Young to an ambulance stored at the facility and had sexual intercourse with her. (DE 25, Young Dep. at 99.) He recorded the incident on Young's cell phone and sent the video to his

3

own phone. (DE 25, Young Dep. at 100; DE 1, Complaint, ¶ 24.).) Fields then drove Young

back to the Wal-Mart parking lot in Cynthiana.  (DE 25, Young Dep. at 101.)

The second time that Fields had sexual intercourse with Young was on March 23,

2019. (DE 28, Response at 3.) He invited Young to visit the City of Paris fire training

facility, and, that afternoon, Young and a female friend went to the facility. (DE 28,

Response at 3.) Young left but then returned at 10:00 p.m. after Fields asked her to come

back. (DE 28, Response at 3.) Fields had sexual intercourse with Young that evening. (DE

28, Response at 3.)  Again, he recorded the incident on Young's phone and sent the video to

his own phone. (DE 1, Complaint, ¶¶ 27-28.)

Defendant Cody Hensley, who is a battalion chief at the Paris Fire Department, (DE 24,

Hensley Dep. at 4) testified that he saw Fields in an office area with Young and another female

at about 5:00 p.m. that day. (DE 24, Hensley Dep. at 47-48.) Fields introduced Hensley to Young

and her friend. He told Hensley that Young and her friend were interested in training, that he was

mentoring them to work for the fire department, and that Young and her friend had previously

been in the Cynthiana Explorers program, which Hensley was not familiar with. (DE 24,

Hensley Dep. at 47-48.) Hensley testified that the fire department is always looking for

personnel, so he said, "yeah, sure, come train with us, get some [required training] hours" and get

a "jump start." (DE 24, Hensley Dep. at 48.)

Hensley testified that very soon after he was introduced to them, Young and her friend

said they had to leave, and they left. (DE 24, Hensley Dep. at 48, 50.) Fields followed them out,

which caused Hensley some concern, so he called Fields to come back. (DE 24, Hensley Dep. at

51.) Hensley told Fields to "use discretion when we have visitors in the station." This was

because some paperwork that displayed private information of patients like social security

numbers and birthdates was lying on the desk in the area where the Young and her friend were.

4

(DE 24, Hensley Dep. at 52.) At some point, Hensley asked Fields if Young and her friend were "underage" because an individual has to be 21 to train for the fire department and 18 to train in emergency medical services. (DE 24, Hensley Dep. at 52-53.) Fields told Hensley that Young and her friend were not underage. (DE 24, Hensley Dep. at 52.)

Fields was ultimately convicted in federal court for violating a statute that prohibits an individual from using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of it. The Court sentenced him to a 420-month prison term. *See United States v. Fields*, No. 5:19-178 (E.D. Ky. Filed Oct. 17, 2019).

With this civil action, Young asserts claims against not only Fields, but also against the city of Paris and Paris Fire Department Chief Michael Duffy and Battalion Chief Hensley, who she asserts were Fields' supervisors. (DE 28, Response at 8-9, 10.) She also asserts claims against the Paris Police Department law enforcement officers Boyer and Royse, both of whom Fields called when driving Young to Safety City. Young asserts claims against all these defendants under 42 U.S.C. § 1983 for violating her rights under the Equal Protection Clause and also for violation of her substantive due process rights under the U.S. Constitution. (DE 1, Complaint, Count I.)

In her complaint, Young also asserted a claim against Fields and law enforcement officers Boyer and Royse for conspiring to violate her constitutional rights. (DE 1, Complaint, Count IV.) She also asserted a claim against all the defendants for violating a state statute that prohibits official misconduct. (DE 1, Complaint, Count III.) Finally, she asserted a state law claim for sexual battery, which appears to be asserted against all defendants. (DE 1. Complaint, Count II.) In her response to the motion for summary judgment, Young withdraws all three of these claims. (DE 28, Response at 13.)

Accordingly, the only remaining claims are the equal protection and substantive due process claims. The city and the four individual defendants other than Fields all move for summary judgment on both of these claims. Because Fields does not move for summary judgment, this opinion does not address the viability of Young's claims against Fields or otherwise address the culpability of Fields for his own behavior. The issue on this motion is whether Young has presented sufficient facts to lead a reasonable juror to find that the city of Paris, Fields' supervisors at the fire department, or Paris law enforcement officers Royse and Boyer should also be liable for Fields' wrongful conduct.

## II.    Analysis

Defendants move to dismiss all claims against the individual defendants in their *official* capacities, pointing out that a § 1983 claim against a government official in his official capacity is treated as a suit against the government entity for which the official works as long as the government entity receives notice of the claim and an opportunity to respond. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Young concedes that the official-capacity claims are duplicative of her claims against the city of Paris. (DE 28, Response at 8.) Accordingly, the Court will dismiss all the official capacity claims.

Defendants also move for summary judgment in their favor on Young's equal protection and substantive due process claims asserted against them in their *individual* capacities. These claims are asserted under 42 U.S.C. § 1983, which gives individuals a private right of action against anyone who, "under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes." *Clark v. Portage Cnty., Ohio*, 281 F.3d 602, 603 (6th Cir. 2001). The defendants do not dispute that Fields was acting under color of state law as a Paris Fire Department employee at the time of the events at issue. Accordingly, the Court will not address that issue in this opinion.

6

The Equal Protection Clause mandates that all persons similarly situated be treated alike. *Andrews v. City of Mentor*, 11 F. 4th 462, 473 (6th Cir. 2021). To prevail on an equal protection claim, a plaintiff must prove that the government 1) treated the plaintiff disparately as compared to similarly situated persons, and 2) that the disparate treatment either "burdens a fundamental right, targets a suspect class, or has no rational basis." *Id.* (citation omitted)

In her complaint, Young clarifies that her equal protection claim is based on sexual harassment as a form of gender discrimination. (DE 28, Response at 8.) "[T]here is no doubt that the right to be free from sex discrimination is protected by the equal protection clause of the fourteenth amendment." *Poe v. Haydon*, 853 F.2d 418, 432 (6th Cir. 1988). And sexual harassment is a form of gender discrimination that violates the Equal Protection Clause. *Wells ex rel. Bankr. Est. of Arnone-Doran v. City of Grosse Pointe Farms*, 581 F. App'x 469, 476 (6th Cir. 2014). Defendants do not dispute that Fields' actions with Young constituted sexual harassment. Accordingly, this opinion does not address that issue.

As to the substantive due process claim, substantive due process "protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." *MSI Regency, Ltd. v. Jackson*, 433 F. App'x 420, 429 (6th Cir. 2011) (quoting *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir.1992)). To recover on a substantive due process claim, a plaintiff must prove "(1) deprivations of a particular constitutional right and (2) actions that 'shock the conscience.'" *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 769 (6th Cir. 2005) (citation omitted). "[M]ere negligence is definitely not enough." *Id.* (quoting *Hunt v. Sycamore Comm. School Dist. Bd.* of Educ., 542 F.3d 529, 535 (6th Cir.2008)).

Young asserts that the defendants violated her substantive due process right to "personal security and to bodily integrity." (DE 1, Complaint, ¶ 45.) "The right to personal security and to bodily integrity bears an impressive constitutional pedigree." *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 506 (6th Cir. 1996). Both rights are unquestionably protected under the substantive due process clause. *Id*

Young does not allege, however, that any of the individual defendants other than Fields personally sexually harassed her or violated her bodily integrity. She does not allege that any of the other defendants even had substantial direct interactions with her. She asserts, however, that the other defendants should be held liable for Fields' actions.

As to Chief Duffy and Battalion Chief Hensley, Young asserts that both are liable for Fields' conduct because they were his supervisors at the Paris Fire Department. (DE 28, Response at 8-9, 10-11.)  "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (internal quotations omitted).

Young has produced no evidence that Duffy or Hensley was aware that Fields had sexually harassed or violated the bodily integrity of Young or anyone else or that he intended to. Though the deposition testimony established that other members of the Fire Department were aware that Fields had engaged in multiple sexual encounters outside of his marriage, Young points to no evidence that any other employee was aware that any of Fields' sexual encounters involved nonconsenting women or minors or otherwise constituted sexual harassment or violations of bodily integrity.

8

Young's theory for how defendants Royse and Boyer are liable for Fields' conduct is not clear. They were not Fields' supervisors and did not even work at the fire department. At the time of the events at issue, both Royse and Boyer worked for the Paris Police Department. Young has withdrawn her § 1983 civil conspiracy claim so she no longer asserts Royse and Boyer are liable as members of a conspiracy. She may allege that the law enforcement officers should be liable for failing to intervene to prevent the violation of her constitutional right to be free from sexual harassment and any violation of her bodily integrity. Young alleges Royse and Boyer "willfully turned a blind eye to Plaintiff's rape." (DE 28, Response at 11.). Young points to no evidence that either officer was aware that Fields was taking an underage woman to Safety City the night that he called them. Young points to no evidence that Royse had any idea who Fields was taking to Safety City. As to Boyer, Young's own testimony establishes that Fields told Boyer that Young was over 18. Young points to no evidence to the contrary. Accordingly, the Court will enter summary judgment for Royse and Boyer on the constitutional claims.

That leaves the claims against the city of Paris, Kentucky. A city can be held liable under § 1983 "only where its policy or custom causes the constitutional violation in question." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005). It cannot be held liable solely because an employee committed a constitutional violation. "While a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional violation directly attributable to it, § 1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir.1997).

In her response, Young argues that the city should by liable for Fields' actions because "[e]very firefighter deposed in this matter acknowledged longstanding and unchecked violations of The City of Paris's Personnel Policies and Procedures." (DE 28, Response at 12.) This case is not about violations of the city's personnel policies and

procedures. This case is about the violations of a minor's constitutional rights by having sex with her and videotaping the incident. Young has not produced evidence that any city policymaker was aware that any employee would engage in such conduct prior to the events at issue.

   "One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). As to inadequate training, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). This is the case where, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to their need." Id. at 390.

   Nevertheless, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Young can demonstrate deliberate indifference for purposes of a failure-to-train claim in one of two ways. First, she can show a "pattern of similar constitutional violations by untrained employees" which would demonstrate the city's "continued adherence to an approach that [it] know[s] or should know has failed to prevent tortious conduct by employees." *Connick*, 563 U.S. at 62. Young has not pointed to any evidence of similar constitutional violations by Paris city employees. She presents evidence that fire department employees discussed sexual activities and shared nude images of females while on duty. She has also produced evidence that at least some fire department employees engaged in sexual activities with nonemployees at facilities used by the Paris Fire Department like Safety City. Young has pointed to no evidence, however, that any fire

10

department employee other than Fields engaged in sexual behavior with an underage or otherwise nonconsenting individual, which is the kind of constitutional violation suffered by Young.

The second way Young can establish inadequate training by the city is by showing "a single violation of federal rights, accompanied by a showing that the municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997). This mode of proof is "available in a narrow range of circumstances where a federal rights violation may be a highly predictable consequence of a failure to equip employees with specific tools to handle recurring situations." *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 739 (6th Cir. 2015) (internal quotations and brackets and citation omitted).  For example, "the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Canton*, 489 U.S. at 390 n.10 (citation omitted).

In such cases, the likelihood that a constitutional violation will occur "could lead to a finding that the policymaker's decision not to train reflects deliberate indifference" to the violation of that constitutional right. *Shadrick*, 805 F.3d at 739. Likewise, "[t]he high degree of predictability" may also support an inference that the policymaker's indifference caused the constitutional violation that was so predictable. *Id.* (citation omitted). While using excessive force may be a highly predictable consequence of the recurring need for law enforce officers to arrest individuals, have sexual intercourse with a minor or otherwise nonconsenting individual is not a predictable consequence of any portion of a fireman's duties. Accordingly, Young has failed to present evidence sufficient to support a claim against the city of Paris for failing to train fire department employees.

As to a failure-to-supervise claim, this is a "rare" claim. "Most agree that it exists and some allege they have seen it, but few actual specimens have been proved." *Amerson v. Waterford Twp.*, 562 F. App'x 484, 491 (6th Cir. 2014) (quoting *Mize v. Tedford*, 375 Fed. App'x 497, 500 (6th Cir.2010)).  To sustain this claim, the plaintiff "must show that the city acted with 'deliberate indifference' to the risk of the constitutional violation and that its deliberate indifference was the 'moving force' behind the assault." *Id*. at 492 (quoting *Mize*, 375 F. App'x at 500 (brackets omitted)). Young could show the city was deliberately indifferent to the risk that its employees would have sexual intercourse with minors or other nonconsenting individuals with evidence of a pattern of similar constitutional violations, with a record of city employees "going unpunished" for similar constitutional violations or other circumstances tending to show that the city was aware or could have been aware that Fields was prone to have sexual intercourse with minors or other nonconsenting individuals. *Id*. Young presents no such evidence. Accordingly, the Court will enter summary judgment in favor of the city of Paris, Kentucky on Young's constitutional claims.

### III.   Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1)   Young's claim for sexual battery (Count II); claims under KRS 446.070 (Count III); and claims for civil conspiracy (Count IV) are DISMISSED, the plaintiff having withdrawn them in response to the motion for summary judgment (DE 28, Response at 13);

2)   Young's claims against all defendants in their *official* capacities are DISMISSED, plaintiff having conceded in her response to the motion for summary judgment that

these claims are duplicitous of her claims against the city of Paris (DE 28, Response at 8);

3) and the motion for summary judgment (DE 23) by the city of Paris and individual defendants Duffy, Hensley, Boyer, and Royse in their individual capacities is GRANTED. Judgment is entered in favor of these defendants on Young's claims for violations of her rights under the Equal Protection Clause and of her substantive due process rights under the U.S. Constitution.

This 25th day of July, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY